[Nos. 22781, 22780. Department Two. March 23, 1931.]

*In the Matter of the Estate of* PETER SICOURMAT,
*Deceased.*

LOUISE McCULLOCH, *Respondent,* v. CHARLES GUILLIUME
*et al., Appellants.*[1]

*J. E. Stewart,* for appellants.
*F. W. Loomis* and *Lester L. Lev,* for respondent.

MILLARD, J.—The defendants have appealed from judgments in favor of the plaintiff in two actions, which are so related that they were tried together and have been consolidated on appeal.

Louise McCulloch instituted one action to set aside the will of her father. She alleged that the decedent was mentally incompetent to make a will; that the will was procured by undue influence; that the beneficiaries under the will had not complied with the condition precedent of supporting the testator. The judgment

[1]Reported in 296 Pac. 1047.

entered, setting aside the will on the grounds of undue influence and noncompliance with the condition of supporting the testator, recites that the purported will

". . . was not his true will and did not embody his true wishes and desires, and was procured by undue influence and further that the said purported will was made in consideration of the said Guilliumes caring for and giving support and maintenance to said Peter Sicourmat for the remainder of his life according to the terms of the paragraph designated as Third thereof, which condition and consideration was never performed by the said Guilliumes."

In the other action, brought by her against the same defendants, Louise McCulloch succeeded in having a deed of her father adjudged a mortgage "to secure the sum of $2,440 advanced to said Sicourmat by said Guilliumes."

When his wife, to whom he had been married fifty-two years, died in 1922, Peter Sicourmat was seventy-eight years old. Andrew Sicourmat and respondent Louise McCulloch, fruit of that marriage, survived their mother. The Sicourmats resided in Grays Harbor county approximately forty years, during which period, by the practice of that thrift characteristic of the French people, they acquired real property (all community property), which Sicourmat, a short time prior to his death in 1929, estimated was worth forty thousand dollars. The gross income from the property was two hundred and thirty dollars monthly. By stipulation of counsel, it was agreed that the value of the property in dispute was from twelve thousand to fifteen thousand dollars.

By her will, Mrs. Sicourmat left all of her property to her husband during his life and, at his death, to their two children, appellant Andrew Sicourmat and respondent Louise McCulloch. Respondent's husband, John McCulloch, was nominated executor in Mrs.

Sicourmat's will, which was not filed for probate until September 15, 1925, by the executor. The executor's petition for probate followed the petition August 26, 1925, of Peter Sicourmat for administration of the estate of his deceased wife.

A short time subsequent to the death in 1922 of his wife, Peter Sicourmat went to Oregon to visit the Guilliumes. The testimony on the part of the respondent was to the effect that no one connected with the Sicourmat family was acquainted with any member of the Guilliume family prior to that time. There is testimony, however, that Peter was acquainted with appellant Charles Guilliume in 1881, when both were engaged in fishing on the Columbia river, just prior to the removal of the Sicourmats from Oregon to Washington.

Within a brief space of time following the death of Mrs. Sicourmat, Peter urged his daughter, the respondent, to make her home with him. The daughter refused. Appellants contend that this was the genesis of the bitterness of the father towards his daughter; that the later disagreement of the McCullochs with Peter, relative to a claim of the former against the Sicourmat estate, culminated in the making of the will which respondent seeks to set aside. The answer to that argument, however, is the testimony of the appellants that Peter was on good terms with his daughter until the controversy growing out of the claim of the McCullochs against the estate, which controversy was subsequent to the date Peter made his will.

Sicourmat executed his will at Astoria, Oregon, October 26, 1925, when he was a guest or a boarder in the home of the Guilliumes. He bequeathed to his daughter one dollar. The remainder of his estate, all real property, was devised to Charles Guilliume and

Andrew Sicourmat, the testator's son. No mention is made in the will that the testator had only a one-half interest in the realty, which was community property. It is noted that Charles Guilliume is mentioned by the testator as his nephew, when in fact they were not related, either by affinity or consanguinity. The third paragraph of the will reads, so far as material, as follows:

"My nephew by marriage, Charles Guilliume, together with his wife, Louise Guilliume, having promised to care for me in the declining years of life and to offer me a home and sustenance as long as I shall live, and in consideration thereof I do give, devise and bequeath unto said Charles Guilliume my said nephew by marriage and to my son Andrew Sicourmat . . . they shall share and share alike said property, the said real property being more particularly described. . . ."

On August 18, 1926, Peter Sicourmat, who was then eighty-two years old, executed a deed at Montesano, Washington, conveying to Charles Guilliume and Louise Guilliume an undivided half interest in real property situated in Aberdeen. This constitutes all of the property of the estate, with the exception of a parcel in Cosmopolis valued at five hundred dollars. The consideration recited in the deed is "ten dollars and other valuable considerations." The money consideration actually paid for the undivided half interest was $2,440, which was borrowed by Peter from the Guilliumes on or about the time he was required to pay the claim of the McCullochs in the amount of $1,848 to free his property from their mortgage against the same. Mrs. Guilliume accompanied Mr. Sicourmat from Astoria, Oregon, to Montesano, Washington, to have the deed prepared. As soon as the deed was executed, it was delivered to Mrs. Guilliume, who had

it placed of record in the office of the auditor of Grays Harbor county.

The will was executed October 26, 1925. The deed was executed August 18, 1926, ten months later. The claim of the McCullochs which Peter was required to pay was filed March 17, 1926, or five months subsequent to the date Peter made the will in Oregon. At the time Peter made his will, he had not had any dispute with the McCullochs concerning money. The only incident that could have engendered bitterness, and induced him to make the will at that time, was the refusal of the respondent to make her home with her father. Appellant Louise Guilliume testified there was no ill-feeling between the daughter and father until Peter was compelled to make a settlement with the daughter in 1926. Mrs. Guilliume testified:

"He felt pretty good towards Mary and Jack Mc-Culloch until that settlement. He wanted to make a will because he didn't get along about that mortgage."

Andrew Sicourmat testified that his father "wasn't sore at the McCullochs until after the first suit was brought." An Oregon attorney of the Guilliumes who was a witness to the will of Peter, testified that Sicourmat devised the property to the Guilliumes because he was indebted to the Guilliumes and they had been kind to him.

"His reason for giving the will was that the Guilliumes had been very kind to him and that he was indebted to them for money advanced."

Peter Sicourmat was a hard drinker, childish, and susceptible to flattery. If some of the witnesses are to be believed, appellant Louise Guilliume controlled every waking action of Peter during the last few years of his life. From the summer of 1925 until his death in 1929, Sicourmat lived in the home of the Guilliumes

in Oregon and the home of his son Andrew in Cosmopolis, Washington. There is testimony that, at one time, Mrs. Guilliume got four hundred dollars from Peter during the period the Guilliumes were, under the conditions of the will, obligated to support him, and that Peter paid to the Guilliumes forty dollars a month for his board each month he was in the Guilliume home. Mrs. Guilliume admitted that ''He gave me a few dollars once in a while.''

Peter Sicourmat died in a public hospital, in a ward set apart for the county indigent. Appellant Charles Guilliume testified that Peter's hospital expenses were being paid out of rents from the Sicourmat property. Appellants did not pay, or offer to pay, any of Sicourmat's hospital expenses, nor were the physicians paid by them. The record discloses that the allowed claims of the hospital and of the physicians amounted to $545. These claims are yet unpaid.

██ ''If the language of the particular clause, or of the whole will, shows that the act on which the estate depends must be performed before the estate can vest, the condition is precedent, . . .'' 28 R. C. L., 312.

The devise was dependent on a condition precedent to be performed by the devisees (the Guilliumes) during the life of the testator—to care for Sicourmat during his declining years, and to give to him a home and sustenance. The Guilliumes can not take under the will. They never complied with the condition imposed upon them to care for Peter Sicourmat in his declining years, and to give to him a home and sustenance as long as he lived. In consideration of compliance with that condition, Peter Sicourmat devised to the Guilliumes his community interest in the real property which had been acquired by the Sicourmats by years of frugality. Peter paid board to the Guil-

liumes whenever he was in their home. He paid for everything he received from them. He was, in fact, a source of profit to the Guilliumes. They permitted him to die as a pauper, neglecting or refusing to employ a physician to care for him the last few weeks of his life.

So, too, the court correctly adjudged the deed to be a mortgage. Appellant Charles Guilliume stated to a number of witnesses, shortly prior to Sicourmat's death, that he had a mortgage from Sicourmat to secure the payment of twenty-four hundred dollars borrowed from the Guilliumes. Charles Guilliume also told two persons that he and his wife had made a loan of twenty-four hundred dollars to Peter to pay the McCulloch claim. Charles Guilliume denied making that statement, explaining,

"I never told the Wallaces that I had loaned Peter money. I had a paper which gave me just as much to say about it as anybody else. That is all I told them. . . . My wife advanced the money. . . . He didn't want no mortgage, that is the reason he borrowed four hundred dollars more. . . . I heard the old man say in the house, if we wanted to loan the money, that he would give us a bill of sale. 'You can break a will,' he said, that is the way he said it, 'But you can't break a bill of sale.' . . . He know I had a mortgage, but they know it from the old man."

If the testimony is to be believed, Mrs. Guilliume suggested to Peter both the deed and the will. Peter decided while in the Guilliume home to execute each of those instruments. Charles Guilliume accompanied Sicourmat to the lawyer's office when the will was made; left Peter there and later returned and brought him home. The will was delivered to Mrs. Guilliume as soon as Peter returned to the home of the Guilliumes. Mrs. Guilliume accompanied Peter from Astoria, Oregon, to Montesano, Washington, to see that

the deed was executed and placed of record. Credible witnesses testified that one of the considerations for the deed mentioned by Sicourmat was that the Guilliumes were to give him a home and take care of him the remainder of his life. Mrs. Guilliume testified that there were other considerations than the recited consideration in the deed of ten dollars. She testified that she and her husband were to give to Peter Sicourmat a home—care for him the rest of his life.

The evidence is clear and convincing that Peter Sicourmat executed the deed to secure the payment to the Guilliumes of the loan of twenty-four hundred dollars. We are convinced that he never understood the purport of the instrument he was signing.

The Guilliumes are not entitled under the will to this property, as the devise was dependent on a condition precedent which they never performed. For a like reason, if the "other valuable consideration" of the deed was that the Guilliumes were to care for Peter the remainder of his life, the grantees would not be entitled to the property—there was a failure of that consideration.

The judgments should be, and they are, affirmed.

MITCHELL, FULLERTON, MAIN, and BEALS, JJ., concur.